HODGSON RUSS LLP
1540 Broadway, 24th Floor
New York, New York 10036
Telephone: (212) 751-4300
Facsimile: (212) 751-0928
Heidi J. Sorvino
Carmine J. Castellano

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**2607 JEROME N, LLC.,** *et al.*,<br><br><br>**Debtors.** | **Chapter 11**<br><br>**Case No. 13-10034 (REG)**<br><br>**(Jointly Administered)** |

## DECLARATION IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN

Aaron Wexler declares and says:

1. I am the Managing Member of Northside Development LLC which is the sole member of 1084 New York N, LLC (Case No. 13-10036) (the "**Debtor**") the Plan Proponent herein, and I submit this Declaration in support of confirmation of the Debtor's First Amended Plan of Liquidation of 1084 New York N, LLC (the "**Plan**").

### BACKGROUND

2. The Debtor filed a voluntary chapter 11 petition on January 3, 2013 (the "**Petition Date**").

3. The filing of the bankruptcy case was largely caused by litigation between the Debtor's parent company and affiliate debtor Northside Development LLC ("**Northside**") and its former partner D&A Equities LLC ("**D&A**").

4. The Debtor was formed to hold a certain piece of real property and improvements thereon located at 1084 New York Avenue, Brooklyn, New York (the "**Property**"). The Property is encumbered by a first mortgage held by FTBK Investor II, LLC ("**FTBK**") with a current balance due of at least $4,371,107.08 with interest accruing at a per diem rate of approximately $1,520.83 since January 9, 2013.

5. Prior to the Petition Date, the Debtor extensively marketed the Property with the help of a commercial real estate broker for several months in order to procure the highest and best possible purchase price for the Property. The Property was shown to over 20 potential purchasers; emails regarding the Property were sent to over 2,000 prospective purchasers; over 25 brokers made daily cold calls to prospective purchasers; and, the Property was listed on gfirealty.com.

6. As a result of its marketing efforts, the Debtor was able to enter into a contract to sell the Property to CRP West 172nd Street, LLC (the "**Purchaser**") according to a Contract of Sale entered into between the Debtor and the Purchaser on September 14, 2012 (the "**Contract of Sale**").

7. Since entering into the Contract of Sale, the Purchaser has sent the Debtor several letters stating that time is of the essence to the close the sale contemplated by the Contract of Sale (the "**Time is of the Essence Letters**"). The Time is of the Essence Letters are annexed hereto as **Exhibit A**.

2

8. The Purchaser has since demanded that the sale contemplated by the Contract of Sale close on or before February 28, 2013.

9. On January 24, 2013, the Debtor filed a motion seeking the entry of an order (I) authorizing it, pursuant to sections 105 and 365 of the Bankruptcy Code, to assume the Contract of Sale entered into pre-petition with the Purchaser and (II) approving, pursuant to sections 105 and 363 of the Bankruptcy Code, the private sale of the Property pursuant to the terms of the Contract of Sale (the "**Assumption and Sale Motion**")..

10. As reflected in the Assumption and Sale Motion, the Debtor and the Purchaser have agreed to a purchase price of $6,060,000.00.

11. Subsequent to filing the Assumption and Sale Motion, the Debtor filed the above referenced Plan and an accompanying disclosure statement (ECF Nos. 60 and 61, respectively) and is now moving for confirmation. In essence, the Plan provides for the distribution of the net proceeds of sale to creditors in accordance with the priorities set forth in the Bankruptcy Code. A closing shall occur after confirmation so as to preserve the transfer tax exemption under 1146(a) which is important in this case because it allows for a greater distribution to unsecured creditors.

12. The Plan provides for the Proceeds of Sale, along with any other assets of the Debtor, to be distributed to holders of allowed claim. The classes under the Plan are as follows:

> Administrative Claims (Professional Fees and Quarterly Fees)
> Class 1 – Priority Claims (including all claims of the City of the New York).
> Class 2 – FTBK Investor II, LLC's Secured Claim.
> Class 3 – General Unsecured Claims.
> Class 4 – Equity Interests.

## CLASSIFICATION AND TREATMENT OF CLAIMS

13. Administration expenses are not separately classified under the Plan. The professional fees of the Debtor's counsel, Hodgson Russ LLP and the Debtor's account, EisnerAmper LLP, will be paid in the amount allowed by the Court after notice and a hearing but not to exceed a total for both parties of $50,000 for work done through the date of the Confirmation Order. On and after the date of the Confirmation Order, professional fees and administrative expenses incurred by entities providing services to the Debtor may be paid from the Claims Reserve Account upon proper application and approval by the Bankruptcy Court.

14. The Plan lists four classes of creditors.

15. Class 1 consists of all Priority Claims including the secured claims of the City of New York. The Debtor will pay all Priority Claims in full on the Effective Date.

16. Class 2 consists of FTBK's Secured Claim. FTBK has agreed accept an amount equal to the amount of its Allowed Secured Claim, including reasonable attorney's fees, as if its Allowed Secured Claim were calculated using a default interest rate of eleven (11) percent rather than sixteen (16) percent from October 1, 2012 until the Closing Date and without the addition of a pre-payment penalty on the condition it is paid in full on or before March 31, 2013.

17. Class 3 consists of the general unsecured creditors. Many of the unsecured claims asserted against the Debtor are disputed, contingent and/or unliquidated and, therefore, the Debtor is unable to estimate the amount of unsecured claims that will be allowed against the estate. The Plan contemplates the creation of a Claims Reserve Account that shall be funded by all the proceeds of the Sale remaining after all administrative, Class 1 and Class 2 claims are paid

4

in full and all other estate assets, including but not limited to, any cash on hand, proceeds from rent receivables and proceeds from any actions commenced or to be commenced by or on behalf of the Debtor as against any parties. All holders of allowed claims in Class 3 shall receive a pro rata share of the Claims Reserve Account.

18.     Class 4 consists of Allowed Interests. The holders of Allowed Interests in Class 4 shall receive a pro rata share of any portion of the Claims Reserve Account remaining, if any, after all holders of Class 3 claims are paid in full.

19.     A Certification of Balloting was filed with the Court on February 21, 2013.

20.     The sole objection to confirmation that was filed is that of the City of New York, which has been resolved by including all claims held by the City of New York in Class 1, including all secured claims held by the City of New York.

## **COMPLIANCE WITH THE PROVISIONS OF SECTION 1129(a)**

21.     Based on my conversations with the Debtor's bankruptcy counsel, who has explained the requirements of Section 1129 of the Bankruptcy Code to me, I make the following representations:

22.     First, the Plan complies with Section 1129(a)(1) in that the Plan complies with the applicable provisions of title 11 of the United States Code.

23.     Second, the Plan complies with the requirements of Section 1129(a)(2) in that the Debtor, as Plan Proponent, has complied with the applicable provisions of title 11 of the United States Code.

24. Third, the Plan has been proposed in good faith, and not by any means forbidden by law as required by Section 1129(a)(3).

25. Fourth, the fees of all professionals for services and expenses incurred in connection with the case are subject to approval of this Court as reasonable, as required by Section 1129(a)(4).

26. Fifth, as this is a liquidating case, the requirements of Section 1129(a)(5) are not applicable in this case.

27. Sixth, as no government regulatory commission has jurisdiction over the Debtor, the requirements of Section 1129(a)(6) are not applicable in this case.

28. Seventh, every class of claims or interests will receive at least as much as such class would receive in a Chapter 7 liquidation. Therefore, the requirements of Section 1129(a)(7) are met. In fact, without confirmation, the Debtor and its estate will lose the benefit of the transfer tax exemption which is not available in Chapter 7.

29. Eighth, no holder of a claim in an impaired class, other than FTBK, cast a ballot in this case, however, Debtor's counsel has informed me that this plan is confirmable under 1129(b) because Class 2 is an impaired accepting class and the Plan "does not discriminate unfairly" and "is fair and equitable."

30. Ninth, the Plan complies with the specific requirements of Section 1129(a)(9) with respect to the treatment of administrative expenses and the claims of taxing authorities, in that all allowed claims of Government Units will be paid in full.

31.     Tenth, Class 2 has voted to accept the Plan and the Plan "does not discriminate unfairly" and "is fair and equitable" meeting the requirements of Section 1129(a)(10).

32.     Eleventh, as this is a liquidating Plan, confirmation of the Plan is not likely to be followed by the need for further financial reorganization. Thus, I believe the Plan meets the requirements of Section 1129(a)(11).

33.     Twelfth, under the provisions of the Plan, all fees due under 28 U.S.C. § 1930 will be paid in full prior to the case being closed as required by Section 1129(a)(12) from the proceeds of sale.

34.     I am advised that the balance of the requirements under 11 U.S.C. § 1129(a)(13), (14), (15) and (16) do not apply to the Plan.

## NO ADDITIONAL NOTICE OF THE CONFIRMATION PROCESS SHOULD BE REQUIRED

35.     The treatment of each class of claims has been clarified since the Plan was circulated for approval and each of the parties objecting to the Plan have withdrawn their objections. The Debtor respectfully submits that these changes do not require additional notice of confirmation or re-balloting of the Plan.

36.     The change to Class 2 was consensual, and Classes 3 and 4 will receive in the remainder of the estate in order of the priority afforded to their claims and interests under the Bankruptcy Code after the holders of the claims in Classes 1 and 2 are paid in full. Accordingly, the holders of claims in Classes 3 and 4 are receiving the full amount they are entitled to under the Bankruptcy Code and are not prejudiced by any amendments made to the Plan.

37. As such, the proposed modifications comply with Section 1127(a) of the Bankruptcy Code, and do not require additional disclosures under Section 1125 of the Bankruptcy Code.

38. The Debtor has included specific language in the Confirmation Order setting out the final treatment of each Class as set forth herein, rather than filing a formal amendment to the Plan. The Debtor has circulated the Confirmation Order to all previously objecting parties and believes that all disputes have been resolved.

For all of these reasons, I submit that the Plan should be confirmed.

Executed on February 27, 2013

                                           /s/ Aaron Wexler
                                           Aaron Wexler